I'm trying to find the clock. There it is. Thank you, sir. Sometimes it's helpful if you'll note you can put your cursor over that clock and you can use a right mouse click and you can fit it to the screen and it'll give you a good, clear picture of your clock. It's perfect, and I appreciate the technical help, Your Honor. I need all the help I can get. My 10-year-old daughter isn't home today to help me with the technical stuff. If it pleases the court, my name is Trey Kitchens. I represent the appellant in this matter. We are requesting this court to reverse and remand the district court's grant of summary judgment against the appellees in this case. The underlying facts of the case, I believe, are important, but don't get to the constitutional issue until the end of the high-speed chase. On January 16, 2019, a vehicle, a green Toyota Camry, was driving in West Memphis, Arkansas. It passed a police cruiser and did not dim their high beams. There was no allegation of any other crime, simply no high beams reduced. The officer pulled in behind the car in question and noticed that there were temporary tags from South Carolina. The officer turned his lights on, and the green Camry fled. It is important and vital to note that my client, or the decedent in this case, and I represent the estate of Mr. Brown, Mr. Brown was not driving that car. He was a passenger in the vehicle. In the briefing provided by the appellees, when you go through their facts section of the briefing, no fewer than 25 times in their facts section, they refer to the suspect vehicle. Members of the court, a vehicle is not a suspect. Individuals are a suspect. They use that term, suspect vehicle, because if they have to focus on the fact that my client was a passenger in this vehicle, did not decide where to drive, how to drive or anything else, they've got additional issues, so they use the phrase suspect vehicle. But it is true though, counsel, that the vehicle and what the driver did are relevant to whether or not the officers acted reasonably about opening fire on the vehicle down the line, correct? No, sir, and I can get to that point, and I'll skip right ahead to it. Respectfully, no, sir, I do not believe it is, because when you get to the end of the chase, when the six officers open fire and fire 40 rounds, based on relevant precedent, I'm not arguing about the high-speed chase. The court has ruled that when somebody decides not to stop and a chase ensues, that that is almost never excessive force, and the case law is very clear about that. It's the end of the chase, Your Honor, when they had the vehicle blocked in. They had the vehicle blocked in. The officers then made the decision to get out of the relative safety of their cruiser and approach this car and start banging on the window with a loaded .40 caliber pistol, and when they couldn't get the windows to break, they reached and grabbed the door and tried to open the door. The decedent, Mr. Brown, was sitting in the car with his hands over his head. The officers created the circumstance where that officer was tragically rammed. Well, counsel, I just have a hard time with that. I mean, what are the officers supposed to do, just stay in their vehicles and wait until the driver decides he's done with this chase? I mean, that strikes me as a tough argument to make. No, sir. Factually, what the record reflects is at the end of the chase, the vehicle was completely pinned in. It could move back and forth. Well, they don't know at that point if the driver is armed or if the passengers aren't, correct? They can see in the vehicle and they can see. Wait a minute. Do they know if the driver is armed at that point? They can see the driver doesn't have a weapon, yes, sir. Absolutely. They can see he doesn't have a weapon in his hand, I suppose, right? I'm sorry, the driver was a she, your honor, but yes, sir. The driver, and they can see in the dash cam videos, that the driver is not armed, the hands are on the wheel, and that my client, or the decedent, sat in his seat with his hands over his head. That's what they were presented with. But, counsel, wasn't the issue here was the driver's decision to turn the vehicle into a deadly weapon? Yes, sir. The driver made the decision to go back and forth after the officer put himself in harm's way. And, your honor, to speak to the point you made, as far as were they just supposed to sit and wait, from the safety of their vehicle, they could have drawn down on the suspect who had actually committed a crime, the driver of the vehicle, and that's Ms. Rivera, they could have done that from the safety of their vehicle. Instead, they elected to approach the vehicle and attempt to open the door. The record reflects that they were giving verbal commands at that time, show me your hands, show me your hands, which Mr. Brown absolutely did. The driver then elected to try to go back and forth in the small amount of area that they had. Had the officers made the decision to stay behind their cruisers, behind the door, they could have opened fire at that time if it was necessary. But instead, they elected to create a much more dangerous situation by approaching the car when they didn't have to. Mr. Kitchens, as I read what's in our record, is there a fact dispute as to whether any of the officers or all of the officers intended to shoot the decedent? I don't think there is evidence that they intended to shoot my client. However, there is a litany of case law that indicates that recklessness can form the basis of 1983 liability, and six officers firing 40 rounds at two people sitting in a car when they didn't need to, and we believe that they did it in retaliation for the other officer tragically getting injured. We believe that absolutely can form the basis for 1983 liability. If you go back and look at the radio traffic that occurred before the... Counsel, before you get to that, I want to ask about... See, I think we're forgetting a lot, which is that this car had escaped several times from trying to stop the car. It had gotten to a full stop and somehow it had escaped. Spike strips had escaped being hemmed in. Maybe they weren't as hemmed in as they were at the end, but they were certainly hemmed in and somehow escaped each and every time. Isn't there some relevance to the fact that there's a history here? They'd been chasing them for a long time, and each time they thought they had caught this particular vehicle, the vehicle got away. Isn't that relevant to why they left the car? The conclusion and the argument you're making, Your Honor, did not appear in any of the investigation. I think it is relevant, though, and it's relevant for this reason. The radio traffic after the car had escaped once, the spike strips did work and took out the passenger tire, but the radio traffic asks, is the state police trooper gone? They indicate yes, and then the West Memphis officer who was in charge of the pursuit said, end it, and the shooting occurred almost immediately after. So at the summary judgment stage, which is where we are, where we're entitled to all reasonable inferences, we, I believe, are entitled to the reasonable inference that the shooting, that final decision that the officers made, was because they were angry and it was in retaliation for the car getting away and their other officer being run over. Is it disputed, though, that it looked like the vehicle was about to run over the officer again? I think that's undisputed, and if it's undisputed, weren't they acting in defense of a fellow officer? They were acting in defense of a fellow officer who put himself in that circumstance, and the 6th and 7th Circuit have both ruled in the cases that we cited that when the officer creates the dangerous circumstance, then the officer can't then turn around and claim defense of self or defense of others. Well, doesn't that happen, though? I know that line of cases, and that line of cases deals with a circumstance in which the officer initiates something. So the officer is actually the one who initiates the fisticuffs, who shoots at somebody or something like that. We don't have that here. What's initiating, in your view, I think, is merely walking up to the vehicle and trying to arrest them finally after this long chase, and that doesn't strike me as the same as being the provoker, the person who provoked a confrontation, which those other cases are concerned with. Your Honor, it's a circumstance where your opinion certainly is the one that matters here. Our argument is this. Had those officers not decided after being told to end it, had those officers not decided to get out of their vehicles and rush up to the car and take loaded .40-caliber pistols and bang on the window trying to get them to break, that officer wouldn't have been put in that life-threatening situation. Had they done a felony stop where they stayed in their vehicles and drew down and said, get out of the car with your hands up, that would have been a circumstance where that officer wouldn't have been run over, and they wouldn't have had to shoot these two people, including my client, who absolutely had no suspicion of a crime, even though the report that was produced by the West Memphis Police indicated that they suspected he was on crack, which is a ridiculous basis because that was simply made up. I would reserve my time if the Court has no questions. I don't see any. Thank you, Mr. Kitchens. Ms. Gibson. Good afternoon, Your Honors. May it please the Court. I'm Gabrielle Gibson, and I represent the appellees in their individual and official capacities. The appellees are asking this Court to affirm the District Court's order granting summary judgment and qualified immunity to them in their individual capacities for the following reasons. First, the District Court properly found that Mr. Brown was not seized within the meaning of the Fourth Amendment. If he was seized, the seizure was reasonable under Supreme Court precedent and Eighth Circuit precedent. Second, the District Court properly dismissed the Fourteenth Amendment claim because it is undisputed in the record below that the officers did not intend to harm Mr. Brown and they had a legitimate governmental interest in stopping the vehicle from running over Officer Presley's legs and potentially reversing and running over Officer Presley and Officer Gill. Third, the District Court properly found, or dismissed, rather, the official capacity and supervisory liability claims because there's no constitutional violation. Fourth, the District Court properly dismissed the state law claims for the same reasons that it dismissed the federal law claims. And lastly, the District Court properly granted qualified immunity to the officers in their individual capacities because one, there's no constitutional violation, but two, there's no clearly established law as of January 16, 2019 that would put the officers on notice that their specific conduct was unlawful. In fact, the case law that is clearly established, Scott v. Harris, Plumhoff v. Rickard, Moore v. Indahar, Simpson v. Fort Smith, all of these cases establish that what the officers did was lawful. Can I ask you about the first part? Sorry, there's an echo. The first part of it, which is the seizure, and in particular, I think the argument that Judge Kobus came up with, or cited a little earlier, that really the officers were unsure who was dangerous. They knew who the driver was, but I don't know that they knew whether both or either were actually dangerous. They knew the driver was, I guess. But my point is you can't kind of have it both ways. My viewpoint is if there was some thought that the passenger was dangerous, then I think that it necessarily follows that there was an intent to seize both of them, or at least there's a genuine issue of material fact about whether they wanted to seize both the driver and the passenger because they could have been dangerous. Could you address that? Yes, Your Honor. First, there is no undisputed fact that the officers intended to aim, aimed and intended to seize the driver. That is who they aimed at and intended to shoot. It is, well, it is undisputed also that they didn't have a chance to pat down these individuals. They have no idea whether either of them is armed. So we do have that point. But the main point is that they did not intend to shoot Mr. Brown. They intended to shoot the driver because she was running over Officer Presley's legs. Let me put it this way. Go ahead. What specifically in the record establishes that? That there is no dispute that they were not going after your colleague's client in this case? It would be all of the officer's deposition testimony. In the appendix, it's page 528. That's when the Statement of Undisputed Facts starts. And it's paragraphs 65 through 71. So that's where that's going to show that it's undisputed that the officers did not aim at or intend to shoot Mr. Brown. And then there's a case, an Eighth Circuit case, that says, it's the Gardner v. Board of Police Commissioners. It's a 2011 case. And it noted that Moore v. Indahar, the case I mentioned earlier, it noted that that case looked to officer testimony as relevant evidence regarding the officer's intentions upon firing the weapon. Let me ask you this, though. And this is, I think, why I'm not necessarily buying your argument, which is if those two, the passenger and the driver, would have left the vehicle, my bet is, given the circumstances here, that they would have seized both of them. They would have at least done a Terry stop, if not more. And so my point is, is if they were shooting, you don't actually have to aim at somebody to create a seizure. You have to be trying to stop them. And my guess is that we don't have undisputed evidence that the shots were fired not in an attempt to stop them. I know that's a double negative. But they were trying to stop both the driver and the passenger. Why is that line of reasoning wrong? Well, Your Honor, I think that the district court got it right when applying the case law that we have to the facts in this case, that Mr. Brown was not seized within the meaning of the Fourth Amendment. We have the McCoy v. Monticello case that says the Fourth Amendment addresses misuse of power, not accidental effects of otherwise lawful conduct. And we have Moore v. Indahar and Simpson v. Fort Smith. They both say that there's no Fourth Amendment claim that's established if a bystander is struck by an errant bullet. But counsel, I think Judge Strauss is suggesting this wasn't a bystander. Or at least they didn't know it was a bystander. I think that's fair. Right. That's better. Better put. Why was this a bystander? Because I think Judge Strauss has made good points about how the police would have reacted had the facts turned out differently here. Yes, Your Honor. This isn't someone standing across the street who got caught in a crossfire. Yes. So turning to that Moore v. Indahar case, it's a 2008 Eighth Circuit case. That case did say bystanders are not seized when struck by an errant bullet. But it's cited to the First, Second, and Tenth Circuits. And those three circuits, those cases had involved hostage passengers. So that did involve a passenger in those cases. The Eighth Circuit case relied on those cases. And then the district court in this case said that whether Mr. Brown was either a passenger or a hostage, that's not in the record, but that doesn't change the analysis of whether he was seized or not. And if it did change the analysis, then there's no clearly established case law that would govern this situation and put the officers on notice that their conduct was unlawful. What about the next step? I think you're maybe on firmer ground on the next step, which is the objective reasonableness, which is you heard opposing counsel say, well, it's sort of too bad that the person was run over because you cannot get revenge. You can't shoot somebody because somebody's already been run over and the officers put themselves in this situation. And I want to hear your best response to that. Yes, Your Honor. So Plumhoff v. Rickard, Supreme Court case from 2014, says that it is the driver that puts the passenger in danger. It's not the officers. Scott v. Harris says it's the driver that intentionally placed, in this case, or in the Scott case himself, and the public in danger by unlawfully engaging in reckless and high-speed flight. The driver is the one that produced the choice of two evils that the officer had to face. So I think the Supreme Court precedent is clear that it's the driver that put herself and Mr. Brown in danger. It's not the officers. The officers are merely reacting to the driver running over Officer Presley's legs. With Scott v. Harris, I mean, the right-line rule in that case is that the officers did not use, or the deadly force was justified when the officers are trying to terminate a dangerous high-speed chase that threatens the lives of other people, even if it places the motorist at risk. And then there's a recent 2022 Eighth Circuit case, Lankford v. Plummerville, and that case was also a police pursuit case, and in that case the court held that deadly force was not unreasonable when there was probable cause to believe that there was an imminent threat of death or serious physical injury to officers or others. So I please would argue that if this court finds that there was a seizure, that seizure was most certainly reasonable, considering the facts of this case. Another point appellant made was that this was recklessness. Well, if he's talking about a potential 14th Amendment claim, the Sykes v. West Memphis case, it's an Eighth Circuit case, it's clear that recklessness is not enough. It has to be intent-to-harm standard for police pursuits, and that also cites to the County of Sacramento v. Lewis. It has to be conduct intended to injure the person in some way unjustifiable by a governmental interest. I would like to note, Judge Strauss, I believe it was you that made this comment, that the officers, this was a 12-minute dangerous high-speed chase, and the officers tried to terminate this pursuit in every way possible before it ended up with deadly force. They tried to box in the vehicle numerous times. The state trooper tried to pit the vehicle. It was unsuccessful. They used spike strips numerous times. It did puncture the back passenger tire, but the vehicle continued to flee, so it was not successful in that way in stopping the vehicle. The officers did everything they possibly could. The car fled through the yard of a residence. They thought that they had the car pinned. It continued to flee, and then it ended with the vehicle running over Officer Presley's legs. And the vehicle had no, when you watch the video, the vehicle, if it was going to continue to flee after that, it couldn't go forward anymore because there was a patrol car, so it was going to have to reverse and go back over Officer Presley and the officer that was rendering aid to him. Counsel, what was the Eighth Circuit case you cited that says that something more than recklessness is required for officer liability? It's CITES v. West Memphis, and I'll give you the… I'm sorry, the first name? CITES, C-I-T-E-S, CITES v. West Memphis. And I can give you… Here it is. It's 606 F. 3rd, 461. Thank you. And that discussion, I believe it starts on pinpoint page 466. The last thing that I would like to note is that as recent as 2016, the Wallace v. City of Alexander case, the Eighth Circuit, it said that it's still not clearly established whether an unintentional shooting would violate the Fourth Amendment. And that's as early as 2016, which is after the Plumhoff case in 2014. So, based on all of those reasons, the appellees would ask that this court affirm the district court's order granting summary judgment and qualified immunity to the officers in their individual capacities. And unless your honors have any further questions, I would like to conclude my argument. I don't see any. Thank you, Ms. Gibson. Thank you. Ms. Kitchens, your rebuttal. Thank you. A couple of things I'd like to go over that was addressed. The Plummerville case that counsel cited, I believe, is the most recent Eighth Circuit case that talked about a high-speed chase and that the police were entitled to use deadly force because the gentleman who was on a motorcycle in that case was headed towards a populated area and he might hurt somebody. And, therefore, the police were entitled to use deadly force against the driver of the motorcycle. And I understand why the appellees would cite to that case. The problem is it's utterly distinguishable from what we're doing here because, again, Mr. Brown was a passenger. He was not driving the car. He was not running the show. And one of the things that is, I think, very important is Fourth Amendment rights are personal rights that can be vicariously asserted, and that's Alderman v. U.S. 394 U.S. 165. And I mention that because I think Mr. Brown's rights and Ms. Rivera's rights are kind of getting muddled together here. And it goes back to the appellees making the argument that this was a suspect vehicle, that the actions taken by the officers were okay because what the vehicle did. But the Supreme Court has held that the rights of individuals are just that. They are the rights of individuals. And you can't lump Mr. Brown in with Ms. Rivera because he was simply in the car with her. His rights to be free from unreasonable seizures, and the court made a very salient point, had Mr. Brown rolled out of that car and got up to walk away, I don't think there is a world in which anybody is going to argue that those police officers would have just waved at him and let him go. He was being seized, regardless of if this ended in a shooting. Counsel, I'm wondering, is there any evidence about intent by the officers to seize your client? What could we find in the record that would support that? A few things, Your Honor, and it's a good question. First of all, the supervisor who was controlling the chase, asking if the state police were gone, and once he knew the state police were gone, him saying, end it. That's one issue. The other issue is the officer who got ran over, and again, tragically ran over, he approached the door of the decedent, Mr. Brown, didn't go to the driver's door, went to Mr. Brown's door, and was trying to break the window and trying to open Mr. Brown's door. They were trying to get at him just as they were trying to get at the driver. Additionally, when the original reports were produced, they indicated that Mr. Brown was suspected of being high on crack cocaine. There is no basis for that, none at all. It was an attempt by the police to try to somehow justify what happened. That is out of whole cloth, not founded in anything, that he was high on crack cocaine, but it is certainly part of the record, and it is certainly part of the argument that they made to try to justify their actions. With respect to the situation being created by the driver, nobody has said anything about a dangerous situation being created by Mr. Brown, because there was no situation created by Mr. Brown. The case law cited by the Appleese talk about chases being justified based on a driver making decisions and putting other people at risk. Mr. Brown did not put anybody at risk. Mr. Brown was a passenger, and if you look at the videos, you can literally see in the lights, with his eyes as big as saucers, with his hands above his head, doing exactly what the officers told him to do. Ultimately, this is a case where an unarmed man was doing exactly what the police told him to do, and he got shot three times for something he had nothing to do with. There was no reason for the officers to get out and approach that car. The car was boxed in. If the officers had stayed in their car and done a felony arrest the way they're trained, the officer wouldn't have gotten run over, and my client wouldn't be dead. They didn't have to shoot this man. His civil rights were violated, and I don't think this is a precedent that is applicable to the law in the United States of America. The court's judgment should be overturned, and we should go to trial. Thank you. Thank you, Mr. Kitchens. Thank you also, Ms. Gibson. The court appreciates both counsel's participation and argument before the court today. It's been helpful, and we'll continue to review the materials and the argument we've heard today.